## In re Application of The Title and Guaranty Company for Change of Name to The Bankers Security Trust Company.

*First Judicial District, Hartford, January Term, 1929.

Wheeler, C. J., Maltbie, Haines, Hinman and Banks, Js.

---

* Transferred from the Third Judicial District.

Argued January 8th—decided March 2d, 1929.

*Lucius F. Robinson,* with whom, on the brief, was *Lorin W. Willis,* for the appellant (the applicant).

*Ernest L. Averill,* Deputy Attorney General, with whom was *Benjamin W. Alling,* Attorney General, for the appellee (the State).

WHEELER, C. J. The motion by the State of Connecticut and its Bank Commissioner to reopen the judgment changing the name of the defendant from The Title and Guaranty Company of Bridgeport to The Bankers Security Trust Company was based upon these allegations: The State of Connecticut and its

Bank Commissioner had no notice of the pendency of the application and no opportunity to be heard thereon. Under the provisions of § 3420 of the General Statutes as amended by Chapter 154 of the Public Acts of 1919 and Chapter 235 of the Public Acts of 1921, it is provided that no corporation other than a bank or trust company incorporated under the laws of this State shall use as a part of its name, or as a prefix or suffix thereto, or as a designation of the business carried on by it, the word "bank," "banking," "banker," "bankers trust" or "savings" or either of these words. The court did not take into consideration in considering the application all of the provisions of this section nor pass upon the question whether the name, "The Bankers Security Trust Company" did constitute or imply corporate powers or authority which such corporation does not by law possess, nor consider or pass upon the question as to whether or not the charter of such corporation confers upon it the powers of a bank or trust company. The other allegations of the motion express merely contentions, claims or beliefs which do not set up issuable facts.

The defendant answered first by admitting paragraphs one and three of the motion in part one of the answer, denying other paragraphs and pleading as to others lack of sufficient knowledge to deny. To these it added certain affirmative allegations which had no place in this defense. It answered further, presumably, although not so entitled, as a special or second defense. The paragraphs of this defense were demurred to by the plaintiffs and the demurrer sustained; the reasons given are sufficient to support this ruling.

The demurrer to part one of the answer was sustained, improperly, since this part of the answer consisted of admissions, denials and lack of sufficient

knowledge to deny. These paragraphs of part one of the answer raised issues of fact which could only be met by evidence sustaining the allegations of the motion to which we have referred. The State, subsequent to the sustaining of the demurrer, was permitted to amend its motion. Three of the paragraphs of this amendment recited the history of the original bill for the incorporation of this corporation when before the committee of the General Assembly, including the objections made to it by the Bank Commissioner. A demurrer by the defendant to these paragraphs was sustained. No question is raised on this appeal as to this ruling, nor as to the overruling of defendant's demurrer to paragraph nineteen.

The defendant thereafter filed its answer to paragraphs fifteen and nineteen, denying paragraph fifteen and paragraph nineteen in part. On this condition of the record, no hearing was required except as to the denials of paragraph fifteen and paragraph nineteen in part, since the sustaining of the demurrer to the paragraphs of part one of the answer, however erroneous, for the time at least, removed them from the case. The court after hearing should have resolved the issues as to paragraphs fifteen and nineteen. It should then have caused to be incorporated in the judgment-file the rulings on demurrer and, either at length or by reference, the issues as determined as to paragraphs fifteen and nineteen. After the rulings upon these demurrers and after issues joined on paragraphs fifteen and nineteen, the court filed a memorandum of decision which upon its face would indicate that the court did consider the facts alleged in paragraphs three, four, five, and six of the motion, the answer to which had been demurred to and the demurrer sustained. The court must have taken these allegations of the motion as admitted in view of the fact that no further answer

was filed by defendants after part one of its answer had been removed, by demurrer, from the case. The defendant filed the day after the memorandum was filed a notice of appeal and subsequently its appeal setting forth among its assignment of errors the sustaining of the demurrer to part one of the answer.

We said in *Bruce v. Ackroyd*, 95 Conn. 167, 171, 110 Atl. 835: "It has repeatedly been held that a memorandum signed by the judge cannot be taken or used as the record judgment. It is but a direction to enter judgment as distinguished from a judgment, and the judgment becomes final only when entered in a court from which execution can issue." See also *Brown v. Cray*, 88 Conn. 141, 146, 89 Atl. 1123; *Hull v. Thoms*, 82 Conn. 386, 391, 73 Atl. 793; *Goldreyer v. Cronan*, 76 Conn. 113, 117, 55 Atl. 594. In *Broughel v. Southern New Eng. Tel. Co.*, 72 Conn. 617, 624, 45 Atl. 435, we say: "All courts are required to cause the facts upon which they found their final judgments, to appear on the record. General Statutes, § 1111 [now § 5795]. Such facts are adjudicated facts, found under the responsibility of the exercise of judicial duty and forming the basis of the judgment rendered." The judgment-file is the only formal written statement which expresses the decision rendered. *Corbett v. Matz*, 72 Conn. 610, 613, 45 Atl. 494.

Again in *Waterbury Lumber & Coal Co. v. Hinckley*, 75 Conn. 187, 190, 52 Atl. 739, it is said: "The record of the court in which the judgment was rendered . . . was the only proper evidence . . . that such record was lost or destroyed." See also *Phœnix Ins. Co. v. Carey*, 80 Conn. 426, 433, 68 Atl. 993.

"It is in the judgment-file one must look to ascertain the facts upon which the judgment rests." *Barber v. International Co. of Mexico*, 73 Conn. 587, 590, 597, 48 Atl. 758.

"Our statutes require that in every case going into final judgment, whether tried to the court or jury, the court shall cause the facts on which it founds such judgment to appear on the record. General Statutes [Rev. 1902] § 763; *Scholfield Gear & Pulley Co.* v. *Scholfield,* 70 Conn. 500, 503, 40 Atl. 182. The object of this section [§ 763] is, first, to show what are those material facts within the issues which have been finally determined; and second, to present the question whether the judgment is the true voice of the law upon those facts." *Nowsky* v. *Siedlecki,* 83 Conn. 109, 116, 75 Atl. 135; *Corbett* v. *Matz,* 72 Conn. 610, 614, 45 Atl. 494.

There was then no valid judgment rendered opening this judgment, merely a direction in the memorandum to enter judgment. There was no finding of the issues in the judgment-file; without this there is no legal way of ascertaining the basis of the granting of the motion to open the judgment.

General Statutes, § 5795, requires that the facts upon which a decree is based shall appear of record. No disposition of a cause which denies this can be accepted as a judgment without error. *Sturdevant* v. *Stanton,* 47 Conn. 579, 581. There was also no finding of facts for purposes of appeal.

There was in this case no final judgment and no appeal could have been properly taken except from a final judgment. Ordinarily a motion to erase an appeal is the proper and exclusive remedy if no final judgment has been rendered. *Wardell* v. *Killingly,* 96 Conn. 718, 115 Atl. 539.

We may, however, dismiss the appeal of our own motion without, as in this case, the request of either party. We are compelled to dispose of this case, as the record stands, without passing upon the main question the parties have argued and desire determined. All that

we can now do to aid in the speedy disposition of this case is to indicate the procedure to be taken. The dismissal of the appeal will leave of record a direction to enter a judgment opening the judgment of October 25th, 1927, which direction could not have been rendered at that time, since upon the record the case had not been fully disposed of in the Superior Court.

Upon the dismissal of the appeal the case must be remanded to be proceeded with according to law. That would involve, upon the record as it stands, a hearing and determination upon the allegations of paragraphs fifteen and nineteen. If the issues were found adverse to the defendant it could secure a finding, and appeal, including in its reasons the sustaining of plaintiff's demurrer to part one of the answer. If this ground of appeal were sustained, as it must be, the case would go back for a hearing on the issues raised by the motion and the denials in part one of defendant's answer. This long process is the only procedure on this record by which the issues arising on the allegations of the motion can be tested. But when the case is remanded since, as we have stated, the demurrer to part one of the answer denying material allegations of the motion was wrongly sustained, the trial court would, no doubt, permit plaintiffs to withdraw their demurrer to part one of the answer, and to amend paragraph eight of the motion to read substantially as follows: The provisions of the charter of The Title and Guaranty Company do not, expressly or impliedly, confer upon it the powers of a bank or trust company or bring it within the provisions of General Statutes, § 3420, as amended. A speedy hearing could be had upon the issues so raised and the main question which the parties desire disposed of, determined in the trial court, and on appeal in this court. The question recurs upon this record: Was the application to open

this judgment taken to the same or a later term than that at which the original judgment was rendered? The opening of a judgment, for clerical or judicial error, if made at the same term at which it was rendered, is within the discretion of the trial court, subject to review, only if abused. *State* v. *Maresca,* 85 Conn. 509, 83 Atl. 635.

After the term has expired the court rendering the judgment has no control over it for the rectification of judicial error, save under exceptional circumstances, though it may correct clerical errors. *Brown* v. *Clark,* 81 Conn. 562, 71 Atl. 727; *Goldreyer* v. *Cronan,* 76 Conn. 113, 116, 55 Atl. 594; *Hall* v. *Paine,* 47 Conn. 429.

The opening of a judgment at the same term of court is made by way of an application in the form of a motion. The opening of a judgment at a later term is in reality an independent action and the preferable procedure is by petition for a new trial, or a bill of review in equity or an application having the same practical effect. *Tyler* v. *Aspinwall,* 73 Conn. 493, 498, 47 Atl. 755; 3 Freeman on Judgments (5th Ed.) § 1191. The application in this case was by motion, the defendant had due notice and the record shows that the parties have had the opportunity to present their respective claims while the court had "full power to entertain and grant applications of this kind." *Tyler* v. *Aspinwall, supra,* at page 498. The application was thus appropriate if brought to a later term than that at which the judgment was rendered, which it is desired to open. We next inquire, was the present application presented at the same or a later term of the court which rendered the judgment? The judgment opening the original judgment was rendered upon an application filed in May, 1928. The original

judgment was rendered on October 25th, 1927, at the October session of the court.

General Statutes, § 5451, provides that "sessions of said court shall be held at Bridgeport on the first Tuesday in January, the first Tuesday in April and the second Tuesday in October." In this and in other statutes terms and sessions of the Superior Court are treated as equivalents. The sessions of the court in Fairfield County have been regarded and treated as equivalent to terms of court, and each of these three sessions as ended not later than the beginning of the next session. This practice has prevailed for over thirty years. See Chapter 223 of the Public Acts of 1897. The same rule must prevail as to the right of the court to render judgment as to each. The court cannot at one term or session try a cause and render a judgment after the close of the next term or session, since § 5524 empowers the judge of the Superior Court who has begun the trial of a civil cause, to continue the trial and render judgment after the expiration of that term, "but such trial shall be ended and judgment rendered before the close of the next term or session." *Whitford* v. *Lee,* 97 Conn. 554, 117 Atl. 554. It would be a singular procedure which would prevent a court from rendering judgment in a case begun by him at the second session thereafter but give the same court power to open a judgment at the second session thereafter, at his discretion.

The October session of this court expired at the latest at the opening of the January session; that session expired at the latest at the opening of the April session at which *Judge Baldwin* presided when this judgment was opened. As a general rule, in the absence of statutory provision, and we have none, no court possesses authority to vacate or set aside its final judgment after the expiration of the term at which

it was rendered. In Corpus Juris, Vol. 34, pages 210 and 211, the rule of law is well stated: "At common law, and in the absence of statute changing the rule, jurisdiction over the cause ceases with the expiration of the term at which final judgment was rendered, and thereafter the court has no power to correct or amend the judgment, and a fortiori the court has no power after expiration of the term to open or vacate the judgment." See also *Hall* v. *Paine*, 47 Conn. 429; 1 Freeman on Judgments (5th Ed.) § 196. The point is immaterial, since we regard this application as in reality an independent action taking the place of a petition for a new trial or a bill of review in equity and not governed by statutory limitations as to time. It could be justified also because the "rule which denies a rehearing to a non-diligent litigant is not applied in cases where the State is interested for reasons of public policy." *Fair* v. *Hartford Rubber Works Co.*, 95 Conn. 350, 356, 111 Atl. 193. The defendant willingly concedes, in its brief, "the rule of law that a sovereign State cannot be barred of a right of action or a defense by the laches of its officials."

The appeal is dismissed and the case remanded to be proceeded with in accordance with this opinion.

In this opinion HAINES and HINMAN, Js., concurred.

MALTBIE, J. (dissenting). I cannot agree with the majority opinion in its treatment of terms and sessions of the Superior Court as equivalents. It is true that in the earlier statutes, while these words do not occur very often, where they do appear it is hardly possible to regard them as other than synonymous. In the Revision of 1875, the various sittings of the courts in each county were definitely designated as "terms." Rev. 1875, p. 40. In 1886 the legislature

enacted a law which provided that one term of the Superior Court should be held in each county on a certain day in each year (except that in New Haven County an additional term was provided for Waterbury) and that sessions should be held in each county at the beginning of the term, and in certain counties at other times, and also that additional sessions might be assigned by the judges at their annual meeting. Public Acts of 1886, Chap. 133. The provisions for one term of court in each year and those for sessions at the beginning of each term and on other days during it appear in separate sections in the Revision of 1888, §§ 790 and 791. In 1897 these provisions were combined in substantially the form of the present statute. Public Acts of 1897, Chap. 223; General Statutes, Rev. 1918, § 5451. Reading the latter statute in the light of its history, it becomes plain that no legislative intent is there manifest to alter the distinction made in 1886 between terms and sessions, the term to run throughout the year and the session to be a subdivision of it, one to be held at the start of each term and others at later times during it as designated.

A recognition of this distinction does not, however, lead to a different result as regards the power of the Superior Court to open judgments. In 1880, in *Hall* v. *Paine*, 47 Conn. 429, we stated the principle of the law which restricts the control a court has over its own judgments to the "term" of court in which they were rendered; "term" then meant the sitting of a court which in the statutes since has been designated as a session; and no doubt that was the sense in which the word was used in the earlier cases recognizing the rule. *Wilkie* v. *Hall*, 15 Conn. 32, 37; *Weed* v. *Weed*, 25 Conn. 337, 342. Reason, as well as authority, dictates that the power of a court over its

own judgments should be restricted to the session over which one judge presides rather than extended to a term embracing most of a year and comprising various sessions held by different judges.

It comes at rather a late day to hold that this appeal did not lie because no formal judgment opening the original judgment had been written out. The necessity of having a formal judgment-file in the case of such a ruling as this was discussed somewhat at length in *Norton* v. *Shore Line Electric Ry. Co.*, 84 Conn. 24, 30, 78 Atl. 587, the court saying that it would be the better practice to enter such judgments of record, but nevertheless sustaining the appeal although it was not done in that case. The cases cited in the majority opinion hardly seem to me to be in point and the requirement that there be a formal judgment-file in such a case as this is a rather useless cumbering of the machinery of justice. However, I agree that the ruling of the trial court opening the judgment was not a final judgment within the appeal statute, because it merely had the effect of relegating the plaintiff to its original position upon its application for permission to change its name and concluded no rights of any party. *Banca Commerciale Italiana Trust Co.* v. *Westchester Artistic Works, Inc.*, 108 Conn. 304, 307, 142 Atl. 838.

But when the majority opinion holds that the appeal is not properly before us but still proceeds to determine the errors presented by it, when it dismisses the appeal, yet takes affirmative action under it, certainly an anomalous result is reached. The order opening the judgment was at most erroneous and the appeal, not being properly before us, should have been dismissed, without more. This would have left the order opening the judgment in force. The plaintiff would then have been in a position where it would

have to pursue its original application in the trial court, and the real questions at issue could have been most simply and quickly reached and determined.

In this opinion BANKS, J., concurred.